UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

SAMUEL ACEVEDO,

                    Petitioner,

      - against -

J.T. SMITH,

                    Respondent.

------------------------------------------------------X

SHIRA A. SCHEINDLIN, U.S.D.J.:

**OPINION AND ORDER**

**08 Civ. 9899 (SAS)**

## I.    INTRODUCTION

Petitioner Samuel Acevedo ("Petitioner" or "Acevedo"), proceeding

pro se, brings this habeas corpus petition pursuant to 28 U.S.C. § 2254 ("section

2254") challenging his state-court conviction for murder in the second degree, for

which he was sentenced to twenty-five years to life in prison.[1]  Acevedo challenges

his conviction on the following grounds: (1) insufficient evidence to support his

conviction; (2) the trial court violated his due process rights by refusing to submit a

lesser-included offense to the jury; (3) the depraved indifference murder statute[2] is

unconstitutionally vague; (4) statements he made to the police while being

---

[1]     *See* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a
Person in State Custody, filed November 17, 2008 ("Petition").

[2]     *See* N.Y. Penal Law § 125.25[2].

questioned about Stacy Freund's murder should have been suppressed; and (5) counsel's assistance was ineffective due to his failure to move to dismiss the depraved indifference murder count on the ground that "the count was unsupported by legally sufficient evidence."[3] For the reasons stated below, the Petition is denied.

## II.   BACKGROUND

### A.   The Offense Conduct

On April 1, 2001, the police found Freund's dead body in her apartment.[4] Freund's death was caused by multiple injuries to her head and face.[5] A medical examiner found that Freund "had sustained at least twelve blows from a hammer, several of which had fractured her skull."[6] On April 11, 2001, Acevedo was questioned by three detectives with respect to Freund's murder.[7] After *Miranda* warnings were given, Petitioner confessed his involvement in Freund's

---

[3]      Petition at 4-5.

[4]      *See* Government's Memorandum of Law in Support of Answer Opposing Petition for a Writ of Habeas Corpus ("Gov't Mem.") at 2.

[5]      *See id.*

[6]      *Id.*

[7]      *See id.* at 2-3.

2

death.[8]  In a statement, first written then subsequently videotaped, Acevedo admitted to purchasing two bags of heroin with Freund's money, then sniffing the contents of one bag before returning to Freund's apartment.[9]  According to Acevedo, when Freund noticed the missing bag she became upset and hit him with a small hammer.[10]  Acevedo wrestled the hammer away from Freund and swung it several times at her head until she was no longer moving.[11]  While he was swinging, Acevedo blacked out and no longer realized what he was doing.[12] Petitioner insisted that he never intended to kill Freund, he was just trying to stop her from harming him.[13]  Under New York County Indictment Number 2181/01, Petitioner was charged with intentional murder and depraved indifference murder. Trial counsel moved to dismiss both counts on the ground that there was insufficient evidence to show that he was the perpetrator.[14]  This motion was denied.  Acevedo's request that the court submit to the jury the lesser-included

---

[8]      *See id.* at 3.

[9]      *See id.*

[10]     *See id.*

[11]     *See id.*

[12]     *See id.*

[13]     *See id.*

[14]     *See id.* at 30.

offense of manslaughter in the second degree was also denied.[15]  After a jury trial,

Petitioner was acquitted of the intentional murder charge but was convicted of

depraved indifference murder pursuant to New York Penal Law section 125.25[2].

### B.    Procedural History

Acevedo appealed his conviction to the Appellate Division, First

Department, raising seven claims.[16]  *First*, he argued "that he was in custody when

he made pre-*Miranda*-warning statements, requiring suppression of his post-

*Miranda* confession."[17]  According to Petitioner, his motion to suppress all of the

statements he made to the police was erroneously denied.  The Appellate Division

found this argument to be without merit, concluding that the pre-*Miranda*

statements made by Acevedo did not result from custodial interrogation.[18]  *Second*,

Petitioner asserted that his right to equal protection was violated when the trial

court replaced an incapacitated juror with the "third alternate juror rather than the

first" alternate juror because the third juror was Hispanic.[19]  The Appellate

Division rejected this argument, noting that Petitioner waived any such claim given

---

[15]     *See id.* at 40.

[16]     *See People v. Acevedo,* 841 N.Y.S.2d 55, 57-60 (1st Dep't 2007).

[17]     *Id.* at 57.

[18]     *See id.*

[19]     *Id.* at 58.

that he "agreed to the juror substitution which was initiated at his behest and on his behalf."[20]

Third, Acevedo argued that there was insufficient evidence to support his conviction for depraved indifference murder.[21] Acevedo conceded that this claim was not preserved, but argued that it should be reviewed in the interest of justice.[22] The Appellate Division rejected this request as "unseemly."[23] Fourth, Petitioner argued that if the Appellate Division "is persuaded that there was legally sufficient evidence of recklessness, the conviction should still be reversed because the trial court denied counsel's application to charge reckless manslaughter as a lesser-included offense to depraved indifference murder."[24] The Appellate Division did not address this claim. Fifth, Petitioner argued that the depraved indifference murder statute, Penal Law section 125.25[2], is unconstitutionally vague.[25] The Appellate Division found this claim to be unpreserved and therefore

---

[20]    Id.

[21]    See id.

[22]    See id.

[23]    Id.

[24]    Brief for Defendant-Appellant, Ex. B to Appendix in Support of Answer Opposing Petition for a Writ of Habeas Corpus, at 59.

[25]    See id.

not subject to review.[26]  *Sixth*, Petitioner claimed that his depraved indifference

murder conviction "is against the weight of the evidence."[27]  The Appellate

Division rejected this assertion, finding "no reason to overturn the jury's

determination or set aside the verdict on the basis of [its] weight of evidence

review."[28]  *Lastly*, Petitioner asserted that trial counsel's failure to move for

dismissal of the depraved indifference count on the ground of insufficient evidence

constituted ineffective assistance of counsel.[29]  The Appellate Division, however,

concluded that there was no basis "for asserting that a 'reasonable probability'

existed that the court would have dismissed" the depraved indifference murder

count had such a motion been made.[30]  On August 16, 2007, the Appellate Division

unanimously affirmed Petitioner's conviction.[31]

On October 5, 2007, Acevedo requested leave to appeal to the New

---

[26]     *See Acevedo,* 841 N.Y.S.2d at 58.

[27]     *Id.*

[28]     *Id.* at 60.

[29]     *See id.* at 58.

[30]     *Id.* at 59.  Acevedo's subsidiary ineffective assistance argument—that he was prejudiced because counsel failed to preserve the insufficiency of evidence issue for appellate review—was also dismissed. *See id.* at 59-60 ("Deprivation of appellate review, however, does not per se establish ineffective assistance of counsel.").

[31]     *See id.* at 61.

6

York Court of Appeals.[32]  On December 13, 2007, the New York Court of Appeals

denied Petitioner's application.[33]  Acevedo filed this timely habeas petition on

November 17, 2008.  For the following reasons, Acevedo's Petition is denied.

## III.   APPLICABLE LAW

### A.   Deferential Standard for Federal Habeas Review

This petition is governed by the Antiterrorism and Effective Death

Penalty Act of 1996 (the "AEDPA").  The AEDPA provides that a federal court

may grant a writ of habeas corpus to a state prisoner only if the state court's

adjudication of a particular claim, on the merits in a state court proceeding,

resulted in a decision that:  (1) "'was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme

Court of the United States;'"[34] or (2) "'was based on an unreasonable

determination of the facts in light of the evidence presented in the State court

---

[32]     *See* Petitioner's Letter Seeking Leave to Appeal to the New York
Court of Appeals, Ex. H to Appendix in Support of Answer Opposing Petition for
a Writ of Habeas Corpus, at 4-6.

[33]     *See People v. Acevedo*, 9 N.Y.3d 1004 (2007).

[34]     *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2259 (2010) (quoting 28
U.S.C. § 2254(d)(1)) (citing *Knowles v. Mirzayance*, 556 U.S. ___, ___, 129 S. Ct.
1411, 1412 (2009)).

proceeding.'"[35]

With respect to subsection 2254(d)(1), the Supreme Court has explained that a state-court decision is "contrary to" clearly established federal law in the following instances:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.[36]

With regard to the "unreasonable application" prong, the Supreme Court has stated:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.[37]

---

[35]   *Id.* (quoting 28 U.S.C. § 2254(d)(2)).

[36]   *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

[37]   *Id.* at 407.

8

In order for a federal court to find a state court's application of Supreme Court precedent to be unreasonable, the state court's decision must have been more than incorrect or erroneous: "[t]he state court's application of clearly established law must be *objectively unreasonable*."[38] This standard "'falls somewhere between merely erroneous and unreasonable to all reasonable jurists.'"[39] While the test requires "'[s]ome increment of incorrectness beyond error, . . . the increment need not be great; otherwise *habeas* relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"[40] Furthermore, section 2254(d) applies to a defendant's habeas petition even where the state court order has no discussion explaining the court's reasoning.[41]

> Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.  This is so whether or not the

---

[38]   *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (emphasis added). *Accord Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (stating that "[t]his distinction creates 'a substantially higher threshold' for obtaining relief than *de novo* review") (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)); *Williams*, 529 U.S. at 409; *Harris v. Kuhlman*, 346 F.3d 330, 344 (2d Cir. 2003).

[39]   *Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)).

[40]   *Jones*, 229 F.3d at 119 (quoting *Francis v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (quotation marks and citations omitted)).

[41]   *See Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 784 (2011).

> state court reveals which of the elements in a multipart
> claim it found insufficient, for [section] 2254(d) applies
> when a 'claim,' not a component of one, has been
> adjudicated.[42]

Section 2254 also applies where a state court does not explicitly state in its opinion

that it is adjudicating a claim on the merits.[43]  "When a federal claim has been

presented to a state court and the state court has denied relief, it may be presumed

that the state court adjudicated the claim on the merits in the absence of any

indication or state-law procedural principles to the contrary."[44]

Section 2254(d)(2) states that habeas relief may be granted where

adjudication of a claim by a state court "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."[45]  With respect to subsection 2254(d)(2), the Supreme

Court has observed that although the term "unreasonable" is difficult to define, "a

---

[42]     *Id.* (citing, *inter alia*, *Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d
Cir. 2001) ("[W]hen a state court fails to articulate the rationale underlying its
rejection of a petitioner's claim, and when that rejection is on the merits, the
federal court will focus its review on whether the state court's ultimate decision
was an 'unreasonable application' of clearly established Supreme Court
precedent.")).

[43]     *See id.*

[44]     *Id.* at 784-85.

[45]     28 U.S.C. § 2254(d)(2).

state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."[46] Moreover, under section 2254(e)(1), a determination of a factual issue by a State court "shall be presumed to be correct" and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."[47] In *Wood v. Allen*, the Supreme Court granted certiorari to resolve, *inter alia*, the question of "whether, in order to satisfy § 2254(d)(2), a petitioner must establish only that the state-court factual determination on which the decision was based was 'unreasonable,' or whether § 2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence."[48] Unfortunately, the Supreme Court did not reach the issue of "whether § 2254(e)(1) applies in every case presenting a challenge under § 2254(d)(2)" because the "reasonableness of the state court's factual determination . . . [did] not turn on any interpretative difference regarding the relationship between these provisions."[49] Although the Second Circuit has not yet addressed this issue, at

---

[46]    *Wood v. Allen*, ___ U.S. ___, 130 S. Ct. 841, 849 (2010).

[47]    28 U.S.C. § 2254(e)(1).

[48]    *Wood*, 130 S. Ct. at 848.

[49]    *Id.* at 849 ("We conclude that, under § 2254(d)(2), the state court's finding that Wood's counsel made a strategic decision not to pursue or present

least one other court has determined that "[b]oth provisions apply independently to all habeas petitions."[50]  Therefore, "'[t]o secure habeas relief, petitioner must demonstrate that a state court's [factual] finding . . . was incorrect by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), *and* that [it] was 'objectively unreasonable' in light of the record before the court.'"[51]

## B.   Procedural Bar

Under the independent and adequate state law doctrine, if the last state court to render judgment clearly and expressly states that its judgment rests on a state procedural bar, federal habeas review is precluded.[52]  In fact, "[t]he Second Circuit has made clear that 'federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of

---

evidence of Wood's mental deficiencies was not an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings.  We therefore do not need to decide whether that determination should be reviewed under the arguably more deferential standard set out in § 2254(e)(1).").

[50]    *Winston v. Kelly*, 592 F.3d 535, 555 (4th Cir. 2010).

[51]    *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003) (alterations, ellipses, and emphasis in original)).

[52]    *See Jones v. Duncan,* 162 F. Supp. 2d 204, 210 (S.D.N.Y. 2001) (citing *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997)).

the federal claim.'"[53]  Federal habeas review of procedurally barred claims is

foreclosed unless the prisoner can demonstrate either: (1) "'cause for the default

and actual prejudice;'" or (2) "'that failure to consider the claims will result in a

fundamental miscarriage of justice.'"[54]  Showing cause for a default requires a

petitioner to put forth some objective factor external to the defense, explaining why

the claim was not raised previously.[55]  Furthermore, a habeas petitioner may invoke

the fundamental miscarriage of justice exception to the procedural bar rule only if

he can demonstrate actual innocence.[56]

### C.    Ineffective Assistance of Counsel Under *Strickland v. Washington*

To succeed on a claim of ineffective assistance of counsel in violation

of the Sixth Amendment, a petitioner "must demonstrate (1) that his attorney's

---

[53]    *Id.* (quoting *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990)). *Accord, e.g., Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Garcia v. Lewis*, 188 F.3d 71, 77-82 (2d Cir. 1999); *Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996).

[54]    *Glenn*, 98 F.3d at 724 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). *Accord Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Epps v. Commissioner of Corr. Servs.*, 13 F.3d 615, 617-18 (2d Cir. 1994).

[55]    *See Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999).

[56]    *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]e think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

performance 'fell below an objective standard of reasonableness,' and (2) that

'there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different.'"[57]  "To satisfy the first prong –

the performance prong – the record must demonstrate that 'counsel made errors so

serious that counsel was not functioning as the "counsel" guaranteed the defendant

by the Sixth Amendment.'"[58]  The inquiry under the performance prong is

"contextual" and "asks whether defense counsel's actions were objectively

reasonable considering all the circumstances."[59]  "In assessing the attorney's

performance, a reviewing court must judge his conduct on the basis of the facts of

the particular case, 'viewed as of the time of counsel's conduct,' and may not use

hindsight to second-guess his strategy choices."[60]

      In determining what constitutes objective reasonableness, courts look

to "'[p]revailing norms of practice as reflected in American Bar Association

---

[57]    *Wilson v. Mazzuca*, 570 F.3d 490, 501 (2d Cir. 2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). *Accord Smith v. Spisak*, 130 S. Ct. 676, 685 (2010).

[58]    *Wilson*, 570 F.3d at 502 (quoting *Strickland*, 466 U.S. at 687).

[59]    *Purdy v. United States*, 208 F.3d 41, 44 (2d Cir. 2000) (citing *Strickland*, 466 U.S. at 688).

[60]    *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland,* 466 U.S. at 690).

14

standards.'"[61]  Attorney errors that fall below an objective standard of reasonableness "include omissions that cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness."[62]  "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"[63] "'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"[64]

To satisfy the second prong – the prejudice prong – a "defendant must show that there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."[65] In assessing prejudice, courts review the record to determine the impact of the

---

[61]  *Purdy*, 208 F.3d at 44 (quoting *Strickland*, 466 U.S. at 688).

[62]  *Wilson*, 570 F.3d at 502 (quotation marks and citation omitted).

[63]  *Knowles*, 129 S. Ct. at 1420 (quoting *Strickland*, 466 U.S. at 689).

[64]  *Id.* (quoting *Strickland*, 466 U.S. at 688).

[65]  *Strickland*, 466 U.S. at 694 (emphasis added).

15

alleged ineffectiveness within the context of the entire trial.[66]   In other words, the "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt."[67]  Finally, a finding of lack of prejudice may precede, or preempt, the quality of representation inquiry.  The Supreme Court has stated:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.  Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.[68]

Thus, if a court finds no prejudice, it need not engage in the often thorny

---

[66]     *See Berghuis*, 130 S. Ct. at 2264 ("In assessing prejudice, courts 'must consider the totality of the evidence before the judge or jury.'") (quoting *Strickland*, 466 U.S. at 695).

[67]     *Strickland*, 466 U.S. at 695.

[68]     *Id.* at 697.

16

inquiry regarding the adequacy of counsel's performance.

## IV.   DISCUSSION

### A.   Insufficiency of the Evidence

Petitioner alleges that there was insufficient evidence to support his conviction for depraved indifference murder.[69]  He argues that the evidence only supports the conclusion that he committed intentional murder.[70]  Under New York law, "in order for a criminal defendant to preserve, for appellate review, a question of law as to the sufficiency of evidence he must make a timely motion to dismiss that is 'sufficiently specific' to alert the trial judge to the substance of his argument."[71]  Here, Petitioner never moved to dismiss on the ground that the evidence supports only intentional, not reckless, homicide.[72]  Rather, at the conclusion of the People's case, Petitioner moved to dismiss solely on the ground that there was no evidence to indicate that *he* committed this crime other than his videotaped statement.[73]  Petitioner's motion "questioned only the sufficiency of the

---

[69]    *See* Petition at 4.

[70]    *See* Brief for Defendant-Appellant at 49.

[71]    Gov't Mem. at 29 (quoting *People v. Gray*, 86 N.Y.2d 10, 19-21 (1995)).

[72]    *See* Acevedo, 841 N.Y.S.2d at 58.

[73]    *See* Gov't Mem. at 30.

evidence that established his identity as the perpetrator."[74]  Consequently, the

Appellate Division found that Acevedo's insufficient evidence claim was

procedurally barred.[75]  Thus, "the court's reliance on that state procedural rule

constitutes an adequate state law ground, independent of the merits of the federal

claim, for rejecting [P]etitioner's request for habeas corpus relief."[76]

Petitioner does not allege that there is cause for his default, nor does

he allege that failure to consider this claim will result in a fundamental miscarriage

of justice.  In fact, the record lacks any indication that some objective, external

factor prevented Acevedo from moving to dismiss on the ground of insufficiency

of the evidence.[77]  Nor does Petitioner claim that he is actually innocent.  Rather,

he argues that the evidence proves that he intentionally murdered the victim by

---

[74]     *Id.*

[75]     *See Acevedo*, 841 N.Y.S.2d at 58. ("His claim is similarly unpreserved
because his dismissal motion at the close of the People's case was not specifically
directed at the alleged legal insufficiency of the evidence.").

[76]     Gov't Mem. at 31 (citing *Coleman*, 501 U.S. at 729).  *See also
Wainwright v. Sykes*, 433 U.S. 72, 81, 86-87 (1977); *Fore v. Ercole*, 594 F. Supp.
2d 281 (E.D.N.Y. 2009); *Brown v. Lord*, No. 00 Civ. 4642, 2003 WL 22670886, at
*3 (E.D.N.Y. Oct. 20, 2003); *Ibarra v. Burge*, No. 02 Civ. 825, 2002 WL 1467756,
at *3 (S.D.N.Y. July 9, 2002).

[77]     *See* Gov't Mem. at 33.

18

beating her to death with a hammer.[78]  Consequently, Acevedo cannot satisfy either

the cause and prejudice or actual innocence standard.                Acevedo attempts

to sidestep the procedural bar by claiming that this Court should review his

insufficiency of the evidence claim, despite the procedural bar, because "a [f]ederal

[h]abeas [c]ourt need not require that a federal claim be presented to a state court if

it is clear that the state court would hold the claim procedurally barred."[79]  "In

short, [P]etitioner urges this Court to entertain the merits of his insufficiency

claim" because Petitioner's claim is "procedurally barred from state review."[80]  In

support of this assertion, Petitioner cites *Grey v. Hoke*, where the petitioner failed

to raise sentencing and prosecutorial misconduct claims in his application for leave

to appeal to the New York Court of Appeals.[81]  Grey then filed a petition for

habeas corpus and the district court found that his claims were exhausted, but

---

[78]    *See Acevedo,* 841 N.Y.S.2d at 58 ("The most recent Court of Appeals clarifications of the depraved indifference murder statute have resulted in a surge of incarcerated defendants eager to 'confess' to intentional homicide as a way of having their convictions for depraved indifference murder reversed while secure in the knowledge that the Double Jeopardy Clauses of the Federal and State Constitutions bar their retrial for intentional murder.").

[79]    Petitioner's Traverse in Return ("Traverse") at 1 (citing *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir. 1991)).

[80]    *Id.* at 2.

[81]    *See Grey,* 933 F.2d at 119.

denied them on the merits.[82]  "On appeal, Grey urge[d] three grounds in support of his petition for habeas corpus," including the sentencing and prosecutorial misconduct claims he failed to raise in his application for leave to appeal to the Court of Appeals.[83]  The Second Circuit determined that "despite petitioner's failure to raise the sentencing and prosecutorial misconduct claims in his application for leave to appeal to the New York Court of Appeals," his habeas petition "should be deemed exhausted because those claims are now procedurally barred from presentation to that court."[84]  The Second Circuit found that *for exhaustion purposes*, a district court "need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."[85]  Subsequently, the court held that Grey "no longer has 'remedies available' in the New York state courts under section 2254, and that he has met the statutory exhaustion requirements for presenting a habeas petition to the federal courts."[86]  The Second Circuit then dismissed the sentencing and prosecutorial misconduct claims without reaching the merits because Grey's

---

[82]    *See id.*

[83]    *Id.*

[84]    *Id.* at 120.

[85]    *Id.*

[86]    *Id.* at 121 (quoting 28 U.S.C. § 2254(b)).

"forfeiture in state court of [said claims] bars him from litigating the merits of those claims in federal habeas proceedings."[87]   Consequently, although a petitioner may not have to present a federal claim in state court in order for the claim to be *deemed exhausted*, a petitioner's forfeiture of that claim in state court bars him from litigating the merits of the claim in a federal habeas proceeding, absent a showing of cause and prejudice or a potential miscarriage of justice.[88]   Because Acevedo has not made such a showing, his insufficient evidence claim is procedurally barred and dismissed.

### B.   Submission of a Lesser-Included Offense

Acevedo claims that "the [trial] court violated [his] Fourteenth Amendment right to Due Process by refusing to submit the lesser-included offense of Manslaughter in the Second Degree."[89]   Petitioner makes two subsidiary arguments in support of this assertion: (1) that "to the extent that there was evidence of recklessness, the recklessness did not [rise] to the level of [d]epraved [i]ndifference;" and (2) New York's statutory distinction between reckless manslaughter and depraved indifference murder violates his right to Due Process

---

[87]     *Id.*

[88]     *See id.*

[89]     Petition at 4.

and Equal Protection under the Constitution of the State of New York.[90]  At the close of the People's case, Petitioner requested that the court submit to the jury the lesser-included offense of manslaughter in the second degree.[91]  His application was denied.[92]  On appeal, Acevedo argued that the trial judge erred in denying his request.[93]  The Appellate Division failed to address this argument when it affirmed Acevedo's conviction.[94]

The AEDPA's exhaustion requirement requires a petitioner to fairly present to the state courts both the factual and legal premises of the claims he asserts in federal court.[95]  After his request to submit second-degree manslaughter as a lesser-included offense of the depraved indifference murder charge was denied, Acevedo made the same argument to the Appellate Division as he makes here.[96]  As a result, his claim is exhausted.  When there is no state court

---

[90]     *Id.* at 4-5.

[91]     *See* Gov't Mem. at 40.

[92]     *See id.*

[93]     *See* Brief for Defendant-Appellant at 59.

[94]     *See* Gov't Mem. at 40.

[95]     *See Georgison v. Donelli*, 588 F.3d 145, 153 (2d Cir. 2009).

[96]     *See* Brief for Defendant-Appellant at 59.

adjudication on the merits and no procedural bar, *de novo* review is required.[97]

   While the Supreme Court has held that due process "requires a trial court to submit jury instructions regarding lesser-included offenses in capital cases," it has "expressly declined to consider" whether such instructions are necessary in the non-capital context.[98]  Similarly, the Second Circuit has expressly refrained from deciding whether the United States Constitution requires lesser-included offense instructions in non-capital cases.[99]  Furthermore, *Teague v. Lane* bars courts from announcing new rules of constitutional interpretation in habeas corpus cases.[100]  Because a decision requiring the submission of jury instructions on lesser-included offenses in non-capital cases would involve the announcement

---

  [97] *See Carvajal v. Artus*, No. 07 Civ. 10634, 2008 WL 4555531 at *24 (S.D.N.Y. Oct. 10, 2008) (citing *Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003)).

  [98] *Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir. 1996) (citing *Beck v. Alabama*, 447 U.S. 625, 637-38 (1980)).  *Accord Gilmore v. Taylor*, 508 U.S. 333, 361 (1993).

  [99] *See Hoffman*, 86 F.3d at 48 ("It is true that in one prior decision, we stated in dictum that an instruction on lesser-included offenses must be submitted even in non-capital cases.  *See United States v. Zapata-Tamallo*, 833 F.2d 25, 28 (2d Cir. 1987).  Subsequent cases, however, have underscored the non-precedential nature of that statement by concluding that 'this Circuit has not yet ruled on this issue.'" *Rice v. Hoke*, 846 F.2d 160, 164 (2d Cir. 1998)).  *Accord Rasmussen v. Kupec*, 54 Fed. App'x 518, 519 (2d Cir. 2003); *Knapp v. Leonardo*, 46 F.3d 170, 179 (2d Cir. 1995); *Harris v. Scully*, 779 F.2d 875, 880 (2d Cir. 1985).

  [100] *See* 489 U.S. 288, 315 (1989).

of a new rule of constitutional interpretation, *Teague* precludes this Court from deciding Acevedo's lesser-included offense claim.[101]

The first of Acevedo's subsidiary arguments—that "to the extent that there was evidence of recklessness, the recklessness did not [rise] to the level of [d]epraved [i]ndifference"[102]—is a reiteration of his insufficiency claim, which is procedurally barred.[103]  Acevedo's second subsidiary argument—that the depraved indifference murder statute[104] is unconstitutionally vague—was presented to the state court for the first time on appeal as a part of Petitioner's insufficiency claim. The Appellate Division found that neither of these claims were preserved.[105] Therefore, under the independent and adequate state law doctrine, federal review of these claims is precluded.[106]  Accordingly, Acevedo's claim that his constitutional rights were violated by the trial court's refusal to submit a lesser-included offense to the jury is not cognizable under the circumstances and is therefore dismissed.

---

[101]   *See Hoffman*, 86 F.3d at 48.

[102]   Petition at 4.

[103]   *See* Point IV.A, *infra*.

[104]   *See* N.Y. Penal Law § 125.25[2].

[105]   *See Acevedo*, 841 N.Y.S.2d at 58.

[106]   *See Duncan,* 162 F. Supp. 2d at 210 (citing *Vacco,* 126 F.3d at 415).

## C.     Statements to the Police

Acevedo argues that the statements he made to the police during questioning should have been suppressed at trial: (1) because his initial statements were made during a custodial interrogation before *Miranda* warnings were issued; and (2) his later statements occurred with "no pronounced break in the interrogation."[107]  On April 11, 2001, after his arrest on a parole violation, Petitioner voluntarily accompanied a detective to the stationhouse and agreed to speak with the police after being told that he was not a suspect in Freund's murder.[108]  In his first pre-*Miranda* statement, Acevedo stated that he had visited Freund on the way to a friend's wake, but then left her apartment.[109]  At 3:00 p.m., in his second pre-*Miranda* statement, Acevedo added that he had offered to purchase heroin for the victim, "attempted to do so unsuccessfully, returned to her apartment and then left."[110]  At some point thereafter, Acevedo's girlfriend came to the stationhouse and informed the police that Acevedo was with her from 3:00 p.m. to 10:00 p.m on the day of the murder.[111]  At approximately 8:15 p.m., the

---

[107]    Petition at 5.

[108]    *See* Gov't Mem. at 51.

[109]    *See Acevedo*, 841 N.Y.S.2d at 57.

[110]    *Id.*

[111]    *See* Gov't Mem. at 47.

25

detectives administered *Miranda* warnings to Petitioner and he waived his right to counsel.[112]  Petitioner then gave a third statement sometime after 3:00 a.m. in which he admitted his involvement in Freund's murder.[113]  Petitioner repeated this admission in a videotaped statement obtained by an assistant district attorney at approximately 8:00 a.m. the next day[114]  At trial, Petitioner's motion to suppress all of the statements he made to the police was denied.  On appeal, he argued that: (1) "because he had already been arrested for [an] unrelated parole violation" when he was brought in for questioning, "his initial two statements to the detectives, obtained before he was advised of his *Miranda* rights, should have been suppressed as the product of improper custodial interrogation;" and (2) "the two statements that he made to the police after he waived his *Miranda* rights were tainted by the purported initial violation and thus should also have been suppressed."[115]  The Appellate Division rejected these claims based on its findings that Acevedo was not in custody at the time of questioning.[116]

     *Miranda* warnings are required when a suspect is interrogated while in

---

[112]   *See id.*

[113]   *See Acevedo*, 841 N.Y.S.2d at 57.

[114]   *See* Gov't Mem. at 47.

[115]   *Id.* (citing Brief for Defendant-Appellant at 21-32).

[116]   *See Acevedo*, 841 N.Y.S.2d at 57.

police custody.[117]  "A suspect is deemed 'in custody' for *Miranda* purposes only if

a reasonable person, under the totality of the circumstances, would 'have felt he or

she was not at liberty to terminate the interrogation and leave.'"[118]  Here, both the

trial court and the Appellate Division determined that Petitioner was not in

custody.  Prior to being escorted to the stationhouse, Acevedo was informed that he

was not being arrested or taken into custody.  Rather, he was advised that he would

be returned to the parole authorities after the interview.[119]  Petitioner agreed to go

to the stationhouse to answer questions.  Once there, he was placed in an interview

room, not a cell, the handcuffs that had been placed on him while in transit were

removed, he was given the opportunity to use the restroom, and he was offered

some food and a beverage.[120]  The trial court found that the questioning of

Petitioner was conducted in an "investigatory," rather than an "intimidating or

accusatory," manner.[121]

 This custody determination is entitled to deference pursuant to section

---

[117] *See Thompson v. Keohane,* 516 U.S. 99, 102 (1995).

[118] Gov't Mem. at 49 (quoting *Thompson,* 516 U.S. at 112).

[119] *See id.* at 51.

[120] *See id.* at 52.

[121] *See id.* (quoting 8/20/02 Order of Justice Laura Visitacion-Lewis, Ex.
A to Appendix in Support of Answer Opposing Petition for a Writ of Habeas
Corpus, at 6).

2254(d)(2).[122]  Alternatively, the state court's findings regarding custody are presumed to be correct pursuant to section 2254(e)(1).[123]  Given the deferential standard of review applicable to state court fact adjudications under AEDPA, I conclude that Petitioner was not in custody when he made his pre-*Miranda* statements.[124]  However, even if Petitioner's initial statements were made while in custody and in the absence of *Miranda* warnings, Petitioner's post-*Miranda* statements "are not necessarily inadmissible as 'fruit' of the original *Miranda* violation."[125]  "[T]he Supreme Court [has] held that 'absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion' with respect to subsequent statements that the suspect makes after receiving *Miranda* warnings."[126]  Rather, the admissibility of any subsequent statement should turn solely on whether it was knowingly and voluntarily made.[127]  "Therefore, we must consider whether the circumstances surrounding [P]etitioner's

---

[122]   *See Parsad v. Greiner*, 337 F.3d 175, 180 (2d Cir. 2003).

[123]   *See id.* at 181.

[124]   *See id.* at 180.

[125]   *Id.* at 183.

[126]   *Id.* (quoting *Oregon v. Elstad*, 470 U.S. 298, 314 (1985)).

[127]   *See id.*

unwarned confession were so coercive as to prevent him from making a subsequent knowing and voluntary waiver of his rights, thereby requiring the suppression of his post-*Miranda* confession."[128]   The circumstances courts examine in these instances include the conditions of the interrogation and the conduct of the police.[129]

Petitioner has offered no evidence that his first two statements were the product of coercion.   Acevedo made these statements willingly to the police without any undue influence.   Furthermore, his first two pre-*Miranda* statements were exculpatory as opposed to the unwarned admissions seen in *Parsad v. Greiner.*   "Moreover, the detectives did not subject [P]etitioner to extended periods of questioning without interruption."[130]   During the questioning, Acevedo was given a "few breaks" by the detectives[131] and different detectives spoke to him at different times.[132]   Consequently, the totality of the circumstances surrounding Petitioner's interrogation do not suggest that his *post-Miranda* inculpatory statements to the police were involuntary or were otherwise the product of earlier

---

[128]   *Id.* (citing *Elstad*, 470 U.S. at 309-14).

[129]   *See United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991).

[130]   *Parsad*, 337 F.3d at 184.

[131]   Brief for Defendant-Appellant at 27.

[132]   *See* Gov't Mem. at 58-60.

coercion.[133]  Accordingly, the decision of the state court to admit Acevedo's

inculpatory statements was neither contrary to, nor an unreasonable application of,

Supreme Court precedent.[134]  Petitioner's claim regarding the suppression of

statements he made to the police is therefore dismissed.

## D.    Ineffective Assistance of Counsel

Lastly, Petitioner claims that his attorney's "failure to move for an

order of dismissal of the depraved indifference count" on the ground of insufficient

evidence constituted ineffective assistance.[135]  On appeal, Acevedo argued that

counsel's failure to "make a sufficiently detailed motion for a trial order of

dismissal of the depraved indifference count on the ground that the evidence was

legally insufficient to support it" was "objectively unreasonable" and "severely

prejudicial."[136]  The Appellate Division found that Acevedo was not prejudiced as

"[t]here is no basis whatsoever for asserting that a 'reasonable probability' existed

that the court would have dismissed the count."[137]  Consequently, Acevedo's

ineffective assistance of counsel claim was dismissed by the state court as

---

[133]    *See Parsad*, 337 F.3d at 185.

[134]    *See* 28 U.S.C. § 2254(d).

[135]    Petition at 5.

[136]    Brief for Defendant-Appellant at 61-62.

[137]    *Acevedo*, 841 N.Y.S.2d at 59.

meritless.[138]

As the Appellate Division correctly found, Petitioner failed to demonstrate that he was prejudiced by his lawyer's failure to move to dismiss on the ground of legal insufficiency. Rather, Acevedo speculates that if his attorney had moved to dismiss the depraved indifference count on the ground of insufficient evidence, that count would have been dismissed.[139] There is nothing to suggest, however, that this would have been the result but for counsel's deficient performance. In fact, the Appellate Division stated that "[t]here is no basis whatsoever for asserting that a 'reasonable probability' existed that the court would have dismissed the count."[140] In sum, Petitioner cannot establish any prejudice resulting from his attorney's failure to move to dismiss the depraved indifference

---

[138]    *See id.* Petitioner did not raise the failure to preserve appellate review issue as an independent ineffective assistance of counsel claim in this habeas petition. *See* Petition at 5. In any event, the Appellate Division found this claim to be without merit. *See Acevedo*, 841 N.Y.S.2d at 60 ("Rather, the defendant's assertion that he is seriously prejudiced by this omission is predicated on the apparent assumption that his claim would be found meritorious upon appellate review. Evidently, the defendant is confident that our review would lead to a reversal of the depraved indifference murder conviction, and remand for a new trial on the only remaining submitted, but not considered, charge; that of intentional manslaughter. *See People v. Suarez*, 832 N.Y.S.2d 532 (2007). Such a result, however, is by no means a foregone conclusion."). This finding is neither contrary to, nor an unreasonable application of, federal law.

[139]    *See* Brief for Defendant-Appellant at 62.

[140]    *Acevedo*, 841 N.Y.S.2d at 59.

31

murder count.  Accordingly, the state court's decision denying Acevedo's ineffective assistance of counsel claim was neither contrary to, nor an unreasonable application of, federal law.[141]  Petitioner's claim of ineffective assistance of counsel is dismissed.

## V.    CONCLUSION

For the foregoing reasons, Acevedo's section 2254 Petition is denied. The remaining issue is whether to grant a certificate of appealability ("COA").  For a COA to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."[142]  A "substantial showing" does not require a petitioner to demonstrate that he would prevail on the merits, but merely that reasonable jurists could debate whether "the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"[143]  Petitioner has made no such showing.  Accordingly, I decline to grant a certificate of appealability.  The Clerk of the Court is directed to close this case.

---

[141]    *See* 28 U.S.C. § 2254(d).

[142]    28 U.S.C. § 2253(c)(2).

[143]    *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks and citation omitted)). *Accord Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            February 8, 2011

33

**-Appearances-**

**Petitioner (Pro Se):**

Samuel Acevedo
# 03-A-2164
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

**For Respondent:**

Eric Schneiderman
Attorney General for the State of New York
120 Broadway
New York, NY 10271
(212) 416- 8000

Cyrus Vance
District Attorney of New York County
80 Centre Street
New York, NY 10013
(212) 815-0400